# Law and Equity

IN THE

# SUPREME COURT

OF THE

## STATE OF NEW YORK.

---

### ADAMS vs. VAN ALSTYNE.

Where the owners of adjoining farms have for sixty years or more maintained each a particular portion of the division fence between the farms, and their children, occupying the farms after them, have continued to maintain the same several portions of fence, these circumstances will not afford any such legal presumption of a grant or deed, as will, when the original farms come to be divided up and held by various owners, prevent the new owners from being governed by the general provisions of the statutes relative to fences between proprietors of adjoining lands; or deprive the fence viewers of the power to make a new division of the fence. HOGEBOOM, J. dissented.

So long as the parties to the prescription, or those holding under them, own the same quantity of land along the division fence, the prescription will continue. It will bind only those who owned the land when the prescription arose. It is not of the nature of a covenant running with the land through all time; but is temporary, governing only the immediate owners, and the land as it was then owned.

THIS was an action of trespass, brought before a justice of the peace, to recover damages of the defendant for breaking and entering the plaintiff's close in Ghent, in May, 1854,

also for driving and confining the plaintiff's cows, &c. on the defendant's premises in July, 1854. The defendant in his answer sets up that the plaintiff's and defendant's closes lie adjoining each other, and that by prescription from the time whereof the memory of man is not to the contrary, the plaintiff was bound to keep the fences in repair; that the plaintiff neglected to do so, and by means of it the trespass was committed. Upon the trial of the cause the plaintiff introduced in evidence an order of the fence viewers, made on the 3d of April, 1854, dividing the fence between the plaintiff and one David Adams, and determining what portion of the fence should be built and maintained by each. It was admitted that trespasses were committed. A diagram was introduced, showing the location of the fence in reference to the farm of the defendant and the adjoining farm. From this diagram and the admissions, it appears that the cattle committed the trespass in consequence of a defect in that portion of the fence which by prescription the plaintiff and his predecessors were bound to repair. It also appeared from the testimony of John T. Hogeboom, that the defendant appeared before the fence viewers and claimed that a portion of the fence had been divided by adjoining occupants of the land, and that the fence viewers had no jurisdiction to make a new division ; that a portion lying between the old road and John C. Gaul's land had not been divided, and he admitted the jurisdiction of the fence viewers as to that part; and that he had called Mr. Moul, as a fence viewer, to aid in the division of that portion. The defendant protested against the exercise of jurisdiction by the fence viewers in dividing any portion that had been previously divided. Admissions were also made in relation to dividing, maintaining and keeping in repair the fence from time immemorial. A protest was also left in reference to the jurisdiction of the fence viewers. Henry Wager, a witness for the plaintiff, also testified that it was claimed by the defendant that the fence viewers had no right to divide, except where the fence had not been divided, and that the fence view-

ers had no jurisdiction. That it was also agreed that the fence had been maintained on the north end by John C. Hogeboom, and the west part by Jacob Loop, for more than twenty years. The suit was instituted to test the question whether the fence viewers had jurisdiction, and the fence could be divided after a division by prescription had been established. The justice decided in favor of the plaintiff, and the county court of Columbia county affirmed the judgment. From the judgment of the county court the defendant appealed to this court.

*Theodore Miller,* for the appellant. I. The rights of the parties are settled by *prescription.* According to the undisputed evidence and admissions in the case, there had been a division of the fence in question from time immemorial, between the adjoining owners, (which must be presumed to have been in writing ;) and the rights were fixed and could not be altered unless it was done by some new agreement of the parties.

The appellant submits then, (1.) That division fences between adjoining proprietors of land may *be established by prescription.* A right of way—a right to use a water course—may be established by prescription. Title to land may be acquired by a continued possession for a sufficient length of time. (*See* 1 *Cowen's Tr.* 423, ed. of 1844 ; *Id.* 379, 387, ed. of 1837 ; *Yates' Pl.* 584. *See also* 1 *Cowen's Rep.* note, *pp.* 79, 82 *and* 83 ; 3 *Kent's Com.* 442, 444, 445 ; 3 *Cruise, R. P.* 521, § 8.) Prescription applies to incorporeal hereditaments. (2 *Bl. Com.* 263, 264. 1 *Greenl. Ev.* 22, § 17. 2 *id.* 529, § 537. *Id.* 531, § 539. *Id.* 532, *note.* 3 *Cruise, R. P.* 524, § 5. *Id.* 526, § 10.) A division of fences established by prescription is an incorporeal hereditament. (3 *Kent's Com.* 401, 402, 403, 427, 438.) The division being established by prescription, it is a covenant running with the lands, and binds the assignee. (*Spencer's case,* 1 *Smith's Leading Cases, p.* 115, 116, 5th *Am. ed.* 2 *Hilliard on Real Property,* 392, 357, § 67. *Kellogg* v. *Robinson,*

6 *Verm. Rep.* 276, 279–282.   *Savage* v. *Mason*, 3 *Cush.* 500, 504, 505.)   (2.) If a division is thus established, the rights of the parties are as well settled as if it was made by a writing.   A right acquired by prescription is as certain, as precise and as conclusive as if acquired in any other legal manner.   The only question is whether there is evidence of a legal division; and it is of no consequence whether it was made by an instrument—by the act of fence viewers—or by a usage of long duration, which establishes prescription. When made and established by evidence in either way, it is binding upon the parties and all who claim under them.  (3.) A division of fences, established by prescription, is similar to any other easement established in the same manner; and a conveyance of a farm only transfers the fences on it and between the adjoining owners as they stand, and as they have existed under prior arrangements.   Therefore, a purchaser of land adjoining another buys the land subject to all agreements between his grantor and the adjoining owners, as to the division fences between them.   He takes the place of the grantor and cannot repudiate the contract of his predecessor. (4.) The plaintiff is estopped by the old division, and the principle of estoppel applies to this case.

II. The proceedings of the fence viewers having embraced a case where a division had been made and established by prescription were void *ab initio*, and without jurisdiction. The revised statutes provide for no case where a division has already been made and established.   (1 *R. S.* 353, 1*st ed.* 3 *Kent's Com.* 438.)   Section 30 provides, that " Where two or more persons shall have lands adjoining, each of them shall make and maintain a just proportion of the division fence between them."  Section 33 provides: " If disputes arise between the owners of adjoining lands concerning the proportion or particular part of fence to be maintained or made by either of them, such dispute shall be settled by any two of the fence viewers of the town."   The appellant claims then, (1.) The statute was intended to embrace only cases where

Adams *v.* Van Alstyne.

it was conceded that both were bound to make the fence, but a dispute existed as to the " proportion or particular part of the fence to be maintained or kept," and there had been no division made by agreement or otherwise. It must be a case where each party was clearly bound to make a portion of the fence. (2.) There was no dispute in this case as to the " proportion or particular part of the fence." It was conceded that the fence had been divided, and the rights of the adjoining owners fixed and settled by prescription. There being then no dispute to settle under the statute, the proceedings of the fence viewers were void and of no effect. (3.) The statute must be so construed as to confine the action of the fence viewers to cases strictly within their jurisdiction. They can take nothing by implication ; and if they exceed their powers, their acts are entirely without jurisdiction and void. (4.) The fence viewers had no jurisdiction under the statute to divide any fence which had before then been divided. Having exceeded their authority, the division was entirely inoperative and illegal. (*6 Mass. Rep.* 90, 95. 96.) (5.) The persons claiming to act as fence viewers had no more right to divide the fence, as they attempted to do, than they would have in a case where a written agreement between the parties had settled the division, or where the fence had immediately before been divided between the same parties by fence viewers duly authorized, or in a case where the application was made by a party who did not own or occupy adjoining lands.

III. The application for a division of the fence was made by one David Adams, and not by the plaintiff, as appears by the proceedings. There is no legal evidence therefore of any division of the fence between the plaintiff and the defendant. Nor is there any evidence that David Adams either as owner or otherwise had a legal right to make such application or had any connection with the fence in question.

IV. The whole case was presented to the justice upon facts proved and admitted, which were not disputed, leaving only

a question of law upon the facts for his decision, the defendant claiming, (1.) That the proceedings of the fence viewers in making a new division of the fence in question, and in assuming to embrace that portion of the fence which had already been divided, were illegal and void for want of jurisdiction. (2.) That the fence viewers illegally attempted to divide a fence which had been previously divided, and in reference to which the rights of the parties had been settled by prescription. (3.) That a former division of the fence having been made, the order of the fence viewers was not binding upon the defendant. (4.) Even although the order may have been regular upon its face, yet the evidence in the case showing that the fence had before then been divided, the fence viewers had no jurisdiction. and the order was inoperative and void.

*J. C. Newkirk*, for the respondent.   I. The cause was tried before the justice on the concession that all the proceedings of the fence viewers in making the division of the fence, April 3d, 1854, were regular, and that the order then made by them was regularly and properly made.

II. No objection was made on the trial to any want of jurisdiction on the part of the fence viewers, (except that the fence had been formerly divided,) or that the order read in evidence was not regularly made; on the contrary, the order was admitted.

III. Hence no objection can now be taken to the regularity of the order, or want of jurisdiction as to the steps necessary to give them jurisdiction; for had they been made on the trial, the plaintiff would have had an opportunity to obviate them.

IV. The cause was tried by the defendant upon the theory that there had been a former division of the fence, and therefore there could not be another division made, and for that reason the order of April 3d, 1854, was not binding on the defendant.

V. The prior division alleged by the defendant was claimed

Adams *v.* Van Alstyne.

by prescription. Prescription is only evidence of an agreement, which agreement from lapse of time is supposed to have been lost. The agreement in this case (if any) was between John C. Hogeboom and Loop. Such agreement was not binding upon the plaintiff, because (1.) He was not a party to it, and it is only binding upon the parties to it. (*Burger* v. *Kortright*, 4 *John.* 414. *Wright* v. *Wright*, 21 *Conn. Rep.* 329.) (2.) The prescription would only be binding so long as the circumstances from which it arose remained the same.

VI. The land of John C. Hogeboom having been divided by sale to different persons, the old division of the fence ceases; and as to the fence between the plaintiff and each owner, it is the same as if no division had ever been made. And this would be the case whether the division had been made by fence viewers, assignment, or prescription. (*Wright* v. *Wright*, 21 *Conn. Rep.* 329.)

VII. Hence the fence viewers could be called upon to make a division between the plaintiff and each of the owners; and the fence viewers had in fact been called upon to make, and had several years before made, a division between the plaintiff and Gilbert, who had become the owner of part of the land of John C. Hogeboom.

VIII. The statute (1 *R. S.* 661, § 30, 4*th ed.*) is as follows: "Where two or more persons shall have lands adjoining, each of them shall make and maintain a just proportion of the division fence between them," &c. § 33 : "If disputes arise between the owners of adjoining lands concerning the proportion or particular part of fence to be maintained or made by either of them, such dispute shall be settled by any two of the fence viewers of the town." The facts are, that the plaintiff and defendant were the owners of land adjoining. Therefore each was bound to make an equal portion of the fence between them. A dispute had arisen as to the part to be maintained by them. Hence the fence viewers could be called upon to settle it. Even if there had been a former

agreement, a dispute arising as to the proportion to be maintained, the fence viewers could be called upon to settle it. (4 *John.* 414.)    The cattle and hogs got through the part to be made by the defendant, and the same being out of repair, he is liable.

IX. But suppose the division made by the fence viewers was void from any irregularity or defect of proof, then we say that the parties owning lands adjoining, and there never having been a division made of the fence between them, each was bound to keep his cattle off the land of the other, and neither was bound to fence against the other; and therefore the fact being that the defendant's hogs trespassed on the plaintiff's land, he is liable without regard to the goodness of the fence, or whether there was any fence or not. (*Holladay* v. *Marsh*, 3 *Wend.* 142.   *Rust* v. *Low*, 6 *Mass. Rep.* 94.)

GOULD, J.   Although this case was withheld, from a decision on the argument, for the purpose of more deliberate investigation, I am not able, even on such investigation, to come to any conclusion different from the one intimated by me at the term.   Although respective proprietors, owning the whole of two large farms, along the entire line of the original division fence between those farms, had, for sixty years, or more, (by virtue of an agreement not produced, or proved to have existed, not appearing to be under seal, or of record,) maintained each a particular portion of that division fence; and although their children, while still occupying the whole of the respective farms, had continued so to maintain the same several portions of fence, I do not see any such legal presumption of a grant, or deed, as will, when the farms on each side of that old fence come to be divided up, and held by various owners, prevent these various new owners from being bound by the general provisions of the statutes relative to fences between proprietors of adjoining lands. (1 *R. S.* 353, §§ 30, 33.)   The case of *Wright* v. *Wright* (21 *Conn.*

*Rep.* 329,) seems to me to contain the whole doctrine covering the case. So long as the parties to the prescription, or those holding under them, owned the same quantity of land along the fence, the prescription would continue. At most, it would bind only those who owned the land as it was when the prescription arose. It is not of the nature of a covenant running with the land through all time; but is temporary, governing only the immediate owners, and the land as it was then owned.(*a*) This is a doctrine of the plainest justice, and the easiest application; and one every way calculated to prevent litigation.

I should affirm the judgment of the county court.

WRIGHT, J. concurred.

HOGEBOOM, J. dissented.

Judgment affirmed.

[ALBANY GENERAL TERM, March 1, 1858. *Wright, Gould* and *Hogeboom*, Justices.]